## PINE ASSOCIATES

v.

## The AETNA CASUALTY & SURETY CO. and Gordon, Muir & Foley.

### Misc. Civ. No. H–83–26.

United States District Court,
D. Connecticut.

Sept. 28, 1983.

As Corrected Nov. 21, 1983.

Raymond A. Garcia, New Haven, Conn., for plaintiff.

Thomas J. Groark, Jr. and John B. Nolan, Day, Berry & Howard, Hartford, Conn., Douglas S. Lavine, Ira Goldman and Robert J. Cathcart, Shipman & Goodwin, Hartford, Conn., for defendants.

## RULING ON MOTION TO REVOKE REFERENCE

JOSÉ A. CABRANES, District Judge:

There is pending before the court plaintiff's Motion to Revoke Reference of Adversary Proceeding (filed Feb. 22, 1983). That motion seeks revocation of the reference of this case to the bankruptcy court; revocation is sought because plaintiff has demanded a jury trial. In response to that motion, defendants have, in effect, moved to dismiss the case or, in the alternative, to have this court abstain from decision. The parties having fully briefed the issues and oral argument having been heard on April 4, 1983, this motion is now ripe for decision.

No dispute exists concerning the relevant facts underlying this motion. Pine Associates, Inc. ("Pine") has been for years a

Connecticut corporation engaged in the business of general construction. During Pine's existence, the Aetna Casualty & Surety Co. ("Aetna") provided Pine with several bonds related to the performance of Pine's contracts. , In 1979 Aetna retained the law firm of Gordon, Muir & Foley ("Gordon Muir") to represent Aetna in its dealings with Pine. At the same time, Gordon Muir undertook to represent Pine on several related matters.

On May 12, 1982, Pine filed a petition in the Bankruptcy Court for the District of Connecticut under Chapter 11 of the Bankruptcy Code. Thereafter, on November 1, 1982, Pine initiated an adversary proceeding against Aetna and Gordon Muir. In its five-count complaint, Pine alleges: first, that Gordon Muir is liable to Pine for legal malpractice; second, that Aetna is liable to Pine for Gordon Muir's legal malpractice; third, that both Aetna and Gordon Muir interfered with Pine's contractual obligations and business opportunities; fourth, that Aetna breached contractual obligations of good faith; and fifth, that Gordon Muir breached contractual obligations concerning provision of legal services. It should be noted that Aetna and Gordon Muir are not foreign entities and that Pine's claims arise under state law. Thus, the basis for federal jurisdiction is asserted to be the status of the adversary case as a matter related to a bankruptcy proceeding.

While Pine's petition was pending before the bankruptcy court, the United States Supreme Court rendered its decision in *Northern Pipeline Construction Co. v. Mar-* *athon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("Northern Pipeline"). In the wake of that decision, the United States District Court for the District of Connecticut, on December 22, 1982, adopted an Emergency Resolution for Administration of Bankruptcy System ("Emergency Resolution"). Section (d)(1)(D) of the Emergency Resolution provides that a jury trial may not be had before the bankruptcy court and that where such trial is sought, the proceeding shall be transferred to a district judge.

Pine's complaint, in its action against Aetna and Gordon Muir, demanded a jury trial. Accordingly, Pine filed the motion presently before this court, pursuant to Section (d)(1)(D) of the Emergency Resolution, to revoke reference of the case to the bankruptcy court. At the same time, Pine submitted a Supporting Memorandum (filed Feb. 22, 1983), in which Pine argued that jurisdiction over the matter was properly vested in this court under 28 U.S.C. § 1471(a) and (b).[1]

In response, Aetna submitted its Memorandum on Motion to Revoke Reference (filed Mar. 28, 1983) and Gordon Muir submitted its Memorandum in Opposition to Plaintiff's Motion to Revoke Reference (filed Mar. 28, 1983). In brief, the two defendants argue that this court does not have jurisdiction over the instant case and that, even if such jurisdiction is found to exist, the court should abstain from decision.

---

1. Section 1471 of Title 28, U.S.C., provides:

    (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under Title 11.

    (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11 or arising in or related to cases under Title 11.

    (c) The bankruptcy court for the district in which a case under Title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

    (d) Subsection (b) or (c) of this section does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under Title 11 or arising in or related to a case under Title 11. Such abstention, or a decision not to abstain, is not reviewable by appeal or otherwise.

    (e) The bankruptcy court in which a case under Title 11 is commenced shall have exclusive jurisdiction of all the property, wherever [*sic*] located, of the debtor, as of the commencement of such case.

Plaintiff has asserted two bases for the survival of this court's jurisdiction over the instant case in the aftermath of *Northern Pipeline, supra.* First, plaintiff points out that the *Northern Pipeline* court nowhere addressed the ostensible jurisdictional grant contained in Section 405(a) of the Transition Statute of the Bankruptcy Reform Act.[2] Thus, plaintiff argues that Section 405(a) is a source of jurisdiction unaffected by *Northern Pipeline. See* plaintiff's Supplemental Memorandum in Support of Motion to Revoke Reference (filed Mar. 21, 1983), at 14.

Second, plaintiff contends that the decision in *Northern Pipeline* invalidated only 28 U.S.C. § 1471(c), leaving intact subsections (a) and (b) as bases of district court jurisdiction.

This court concludes that Section 405(a) cannot serve to ground jurisdiction in this court. Within that section, specific reference is made to "the transition period," and the section itself is, of course, part of the Transition Statute. The contemplated transition, necessitated by the institutional changes effected by the Bankruptcy Reform Act of 1978, will be completed on April 1, 1984. *See* Section 402(b) of the Transition Statute. Thus, Section 405(a) could vest jurisdiction in a district court only to hear bankruptcy cases until April 1, 1984.

■ If the general grant of bankruptcy jurisdiction to district courts contained in 28 U.S.C. § 1471 is constitutionally defective, it makes little sense to regard the Transition Statute as allowing a year or so of grace before the bite of *Northern Pipeline* is felt. Nothing in the Transition Statute even remotely suggests that it was framed or adopted with such a view in mind. On the contrary, there is every reason to believe that the statute was intended, as it indicates, to facilitate the transition to the bankruptcy system envisioned as effective on April 1, 1984. In referring to the assignment of cases to particular courts, the Transition Statute merely recapitulates the jurisdictional scheme set forth in 28 U.S.C. § 1471; nothing in either statute permits the inference that the Transition Statute independently creates jurisdiction. Accordingly, this court is persuaded that Section 405(a) of the Transition Statute states only a procedural rule; it is not a grant of jurisdiction. Even if Section 405(a) could be read as inferentially creating jurisdiction, the scope of that jurisdiction would be demarcated by the explicit jurisdictional statement of 28 U.S.C. § 1471. Thus, it is upon that statute that our inquiry must focus.

Section 1471 describes a complex process of granting and locating jurisdiction. Subsection (a) purports to vest original, though not exclusive, jurisdiction over bankruptcy matters in the district courts. Subsection (c), however, provides that that jurisdiction shall be exercised by the bankruptcy courts established by the Bankruptcy Reform Act.

The jurisdiction granted the bankruptcy courts in subsection (c) is quite broad; indeed, with minor exceptions not relevant

---

2. Section 405 of the Transition Statute, following Title 11 of the United States Code, provides:

(a)(1) All cases commenced under Title 11 of the United States Code during the transition period shall be referred to the United States bankruptcy judges. The United States bankruptcy judges may exercise in such cases the jurisdiction and powers conferred by subsection (b) of this section on the courts of bankruptcy continued by section 404(a) of this Act, and all proceedings in such cases shall be before the United States bankruptcy judges, except—

(A) a proceeding to enjoin a court;

(B) a proceeding to punish a criminal contempt—

(i) not committed in the bankruptcy judge's actual presence; or

(ii) warranting a punishment of imprisonment; or

(C) an appeal from a judgment, order, decree, or decision of a United States bankruptcy judge.

(2) Except as provided in subsection (c) of this section, any proceeding in a court of bankruptcy in a case under Title 11 of the United States Code that is not before the United States bankruptcy judge shall be before the judge of the court of bankruptcy for the district in which such case is pending.

here, it is coterminous with the jurisdiction granted district courts. Moreover, in abolishing the distinction between "summary" and "plenary" jurisdiction, Congress appears to have sought to vest in the bankruptcy courts the full allocation of bankruptcy jurisdiction available under the Constitution. *Northern Pipeline, supra,* 450 U.S. at 54, 102 S.Ct. at 2862. It was because of the scope of that jurisdiction, taken together with the fact that bankruptcy judges are not appointed under Article III of the Constitution, that the Supreme Court held in *Northern Pipeline* that a bankruptcy court could not constitutionally exercise jurisdiction over a claim arising purely under state law, where the property at issue was not within the *res* of the bankruptcy estate, and where the only basis for jurisdiction asserted was 28 U.S.C. § 1471(c). The parties to the case at bar are agreed that *Northern Pipeline* invalidated Section 1471(c).

The more difficult question, and the one presented by the instant case, is that of the impact of *Northern Pipeline* on subsections (a) and (b) of Section 1471, that is, on the grant of jurisdiction to the district courts.

Plaintiff contends that the only question before the Supreme Court in *Northern Pipeline* was that of the constitutionality of Section 1471(c). As district courts are created under Article III, plaintiff argues, there is no constitutional objection to vesting plenary bankruptcy jurisdiction in them; and, plaintiff concludes, as subsections (a) and (b) do contain just such a jurisdictional grant, it follows that this court has jurisdiction over the case at bar.

On its face, plaintiff's argument is not implausible. Upon reflection, however, this court is not persuaded.

In *Northern Pipeline,* the Supreme Court considered one aspect of the legislative scheme for disposition of bankruptcy cases. But the Court also called attention to the non-severable quality of the jurisdiction granted the bankruptcy courts. *Northern Pipeline, supra,* 450 U.S. at 87 n. 40, 102 S.Ct. at 2880 n. 40. In noting that quality, the Court observed that it could not say

how Congress would rectify the constitutional defect located in Section 1471(c). *Id.*

The fact that Section 1471(c) is part of an integrated system for the administration of bankruptcy cases, rather than an isolated statute, and the fact that the ultimate structure of that system must be determined by Congress explain why, in the instant case, plaintiff's argument must fail. The Bankruptcy Reform Act of 1978 was intended to effect a specific jurisdictional arrangement. Jurisdiction, though vested in district courts, would be exercised by bankruptcy courts. On the one hand, Congress did indeed seek to extend federal jurisdiction over bankruptcies. On the other hand, Congress apparently did not want to burden district courts with the added caseload that expansion would entail. Section 1471 sets forth the compromise designed by Congress to accommodate both concerns.

With that in mind, it cannot be said that the demise of subsection (c) leaves subsections (a) and (b) wholly intact as grants of jurisdiction to the district courts. This court is hardly prepared to surmise that Congress, had it known that subsection (c) would not survive, would nonetheless have adopted subsections (a) and (b) in their present form. In arguing the contrary, plaintiff asks this court to endorse a jurisdictional arrangement that existed neither before nor after passage of the Bankruptcy Reform Act and that has never received congressional approval. The court is disinclined to accept that invitation. With the collapse of the jurisdictional arrangement of Section 1471, it is wiser to return, out of deference to Congress and out of a concern for the administrative burden that would otherwise be imposed on the district courts, to the *status quo* that existed before the Bankruptcy Reform Act.

█ To say that is, of course, to indicate the limits of this decision. All that is determined here is that this court lacks jurisdiction to hear a case in which, first, the only basis asserted for that jurisdiction is the relation of the case to a bankruptcy proceeding, and, second, at least one of the parties objects to that jurisdiction. The

case at bar is one over which federal jurisdiction could only be exercised under the Bankruptcy Reform Act. The impact of *Northern Pipeline* on other bankruptcy cases is not at issue here.

The court's conclusion in this case is consistent with a fair reading of *Northern Pipeline,* which makes it apparent that more than just Section 1471(c) was at issue in that case. In defining the jurisdiction of the bankruptcy courts, and in distinguishing *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), the *Northern Pipeline* court made specific reference to Section 1471(b), *Northern Pipeline, supra,* 450 U.S. at 84–86, 102 S.Ct. at 2878–2879, emphasizing that the bankruptcy courts, under the Bankruptcy Reform Act, were to exercise "all of the jurisdiction," 28 U.S.C. § 1471 (b), conferred by the Act on the district courts, *Northern Pipeline, supra,* 450 U.S. at 85, 102 S.Ct. at 2879. The implication, though unstated, cannot be avoided: *Northern Pipeline* cannot have invalidated *only* subsection (c); it must have invalidated some part of subsection (b) as well.

That conclusion is also consistent with the Supreme Court's practical resolution of the *Northern Pipeline* case. Had the Court thought that the district court possessed residual bankruptcy jurisdiction, it would not have dismissed the entire action; rather, it would have remanded the case to the district court. But that is not what the Supreme Court did: instead, it affirmed the district court's ruling granting the motion to dismiss. In the case at bar, plaintiff proposes that the jurisdictional problems that so vexed the Supreme Court could have been easily resolved by maintenance of the action in the district court. This court finds it inconceivable that the *Northern Pipeline* justices, who carefully considered the question of how Congress, the lower courts, and litigants might cope with the consequences of *Northern Pipeline,* should mysteriously have failed even to hint at such a possible remedy.

As the court has determined that it is without jurisdiction to hear this action, the question of abstention will not be reached. For the same reason, the court need not consider defendants' argument that the Emergency Resolution is itself unconstitutional.

Accordingly, plaintiff's motion to revoke the reference to the bankruptcy court is denied. The action is remanded to the Bankruptcy Court with instructions to dismiss it for lack of jurisdiction.

It is so ordered.